Case Number 18-11203, Anaya v. Davis, and we'll begin with Ms. El-Khoury. Thank you, your honors, and may it please the court. I would like to reserve five minutes for rebuttal. My name is Adele El-Khoury and I am counsel for petitioner David Anaya. Under clearly established Supreme court precedent, Mr. Anaya received ineffective assistance of counsel in deciding to go to trial rather than plead guilty. First, as to deficient performance, there's no dispute that under clear Texas law at the time, the jury was permitted to consider Mr. Anaya's failure to retreat in deciding whether he acted reasonably and using deadly force. Common sense dictates that any juror weighing a self-defense claim will consider whether a person could retreat in deciding whether that person acted reasonably. That is precisely why Texas law prohibits jurors from considering whether the person failed to retreat in certain cases. In Mr. Anaya's case, retreat was a critical issue because he was in a car and thus any jury that was allowed to consider retreat would likely conclude that Mr. Anaya could have retreated and therefore acted unreasonably. Knowing whether the jury would be permitted to consider retreat was therefore central to Mr. Anaya's assessment of the strength of his case at trial. Yet rather than tell Mr. Anaya, his failure to retreat would be critical. His counsel misadvised him that it would be irrelevant. This was affirmative misadvice on a point fundamental to the case, and it robbed Mr. Anaya of his right to make an intelligent decision, whether to go to trial or plead guilty. That your honors is quintessential deficient performance. Okay. Let me ask you this. Even if we were to assume arguendo deficient performance and assume arguendo that he would have accepted the plea, your brief says that the Frey case in the Supreme Court says a particular factor intervening circumstance is required to cause judicial non-approval of a plea bargain. And that is not what that case says at all. It's not even close. What that case says is that's a matter of state law and you need to put on some evidence or proof that would show us what that is. So for example, there might be a state where the judge could not reject a plea that would prove it. But you say nothing about what the rules are in Texas on this. So please expand on that. Respectfully, your honor. What Lafler and Frye says is that ordinarily it will be possible for a particular fact or an intervening circumstance that would have caused the state to withdraw the plea or the court to reject the plea and what courts have looked to is whether there are such circumstances on the record. Now that could be that the plea offered a sentence that was outside of the guidelines range. That could be that the court opined on what an appropriate sentence was. That could be that there are reasons to think that the state was through it, such as that there were multiple pleas. There are no such circumstances here and respectfully, your honor, that is sufficient under Lafler. The one would expect that if the state could point to some other facts and circumstances here, it would have done so, but it hasn't because there aren't any, this isn't an unusual case and other really clear that this is something that the burden is on Mr. Anaya here and not just, well, you know, there isn't anything out there. There isn't any discussion at all of what the Texas rules are on this and what discretion the judge would have, what the judge typically does in these situations, because if the judge has total discretion, they don't have to have some, well, it doesn't meet the sentencing guidelines kind of thing. Texas doesn't have that exact setup like the federal government. So if there's a lot of discretion versus not much discretion, that's something that at least has to be addressed. Please point me to where it is addressed in this case. Your honor, Texas law is similar to federal law where the court has discretion to reject the plea agreement. And the state does have withdrawn with discretion to withdraw the plea agreement, but respectfully, just because those courts have discretion, if that were the only inquiry, then no defendant could ever meet this standard under fry. No defendant could, because a defendant is not going to have access to evidence about what a court was thinking or, uh, what the state was thinking. And he's not going to have about what usually happens. And there's none of that. What I'm saying is you can at least make an effort to talk about, I mean, sometimes we have to decide what would influence a jury and obviously we don't have the jury sitting there to ask them, but you can look, as you said, at objective factors, but you have to do that. You have to walk down that road. And I'm asking you, where did you all do that? Well, you're on a court. Well, well, in the state court, your honor, the, um, the state court issued a decision, uh, uh, that was without a written order. So are you asking where we've addressed it in our briefs here? Or are you asking a record? We still have to look at, well, it would help to your brief. As I said, I think the state, the holding of fry, but we have to give deference to the state court. Okay. So we have to look at the state court record and we have to see what is in the state record that would show that this was an unreasonable application of the law or an unreasonable determination of the facts. So I'm asking you point me where you walk the state court down the aisle and then where you walk the federal district court and where you're walking us down this aisle, because I'm not. Well, your honor. So previously, Mr. Anaya did brief before the state court and the district court here that, you know, he had met his burden because, you know, he submitted in his affidavits that he would have accepted the plea that the state, that the state would have, um, continued on with the plea and that the court would have accepted it. Now reading those pleadings liberally, as this court does with a pro se indigent defendant, we have then taken up on appeal and pointed to the fact that in the state record, there are no particular facts or intervening circumstances to suggest that, that, that, that is what would have happened. Typically what happens is the, unless there are unusual circumstances, the state offers the plea agreement. And if the defendant accepts the court enters it after the colloquy and there aren't facts here. For example, that's how things happen. That 99% of the time, the judge accepts the plea or 90% or anything like that. Well, your honor respectfully in Lafler, the court affirmed the six, the Supreme court affirmed the sixth circuit reasoning on this and the sixth circuit reasoning was that he had stated in unrebutted affidavits that he would have accepted the plea and that there was no reason to think that the state court would have withdrawn it or I'm sorry that the state court would have rejected it or that the state would have withdrawn it. And so the Supreme court did affirm that reasoning and that's why other courts of appeals applying that holding have said, unless there is some reason in the record to think that this would not have gone in the ordinary course, then we will find that defendant has met its burden. That is the way that courts have heard Lafler and that's because Lafler did affirm the sixth circuit reasoning. And that's not the case here. There are no such circumstances. And we've pointed you to a case in our briefs where, where there were such circumstances and those are cases where, you know, the state either the, the, the, there were multiple pleas that the state withdrew, um, where the sentence was outside of the guidelines range where the court comments on the fact that it thinks one sentence is appropriate regardless of what the plea is or what the sentence is. And there is simply none of that here. And the state hasn't come back. There are many contexts in the law, your honor, in which someone who has the burden of proof comes forth with what they have. And one would expect the other side to come back and say, you know, here's, we're pointing you to something different and the state hasn't done that here. And so respectfully, your honor, we submit that we have met our burden under Lafler and this court has credited affidavits on that point before. Okay. Let me ask you something else. You keep saying that the affidavit is unrebutted, but actually I don't know that that's really so because the attorney. For Ms. That was Mr. Mr. Bailey, um, said that. Ms. David and I, as allegations that I rendered ineffective since the council are not true and are without merit. Now, maybe that isn't much of a rebuttal, but it is a rebuttal. He is disagreeing with the premises. Mr. And I have made. Why isn't that a rebuttal? Your honor. He does say that, but that is his introductory sentence to discussing all of the claims that Mr. And I erased, he then goes through his conclusion. I'm sorry. Yes. I'm sorry. His conclusory sentence, but what I mean is it's referring to all of the allegations that Mr. And I erased, he raised several allegations about an effective assistance council, several claims. And with respect to this claim and effective assistance in the plea bargaining, he only responds with boilerplate, whereas the others, he actually goes through a notable detail, um, denying, giving his own version, attaching affidavits. And here he just gives you boilerplate that he advised as to all outcomes. It was Mr. And I, as choice to go to trial, that is not sufficient. And again, your honor, I would just, I would just point you to this, that if you think that's unclear, then you should remand and let the hearing on this. Um, I know that the court denied the COA on that, but that was before it had the benefit of, of briefing and of understanding that this may be a factual question on the affidavits. And so if, if as a second level matter, we would ask that you just remand and allow the district court to, uh, to deal with that. And, you know, whether it's to put Mr. And I on the stand or to bring his lawyer in, but, but he does not rebut specifically this one claim he does the others, but not this one. And the district court noted that. Oh, I'm sorry. Yes. Stating succinctly why you feel that the state court through all these proceedings made an unreasonable application of law, which of course is the second level you've got to satisfy. Not only do you have to show deficient performance and prejudice, but you've got to show an unreasonable application of law by the state court. So why was that church Barksdale? It's because on deficient performance idea is clear that affirmative misadvice and omissions by council, when the answers are readily available, are deficient performance. That is textbook deficient performance. And in fact, the state I mean, again, we've got to show deference to the state court proceedings and that point is not, um, uh, accepted by the state courts. Your honor. But again, the reason that that was unreasonable is because Mr. Anaya, uh, a test in his affidavits and the district court acknowledges that his council told him that retreat was quote irrelevant when in fact it was central to his assessing his chances at trial and to understanding what he was going into when he was facing trial. And so that is an unreasonable application of Padilla on the deficient performance, uh, part of your honor. Well, I'm, I'm perhaps not asking my question very well, but that's why we have the state court proceedings that make the findings in fact, conclusions of all, where, where are they in era? Why would you say it's such so crystal clear that they were erroneous in their applications since they had all these affidavits from Anaya and his grandparents and his wife or his parents, et cetera, et cetera. And they had Bailey's very boiler plate. Uh, affidavit. Your honor. So the, the, the state court denied the claim without written order. So we don't actually have findings by the state court. Although, you know, we presume that it adjudicated this on the merits, um, but the district court actually didn't decide deficient performance, but in discussing deficient performance, it did acknowledge that it had unrebutted affidavits, um, and I'll, and I'll just, I'll just quote here. Um, it had affidavits before the court, uh, um, excuse me, your honor. Um, stating that defense council did in fact, misadvised petitioner on the state of the law with regard to retreat and using deadly force in self-defense and possibly as the likelihood of success in asserting such as a justification for petitioner's actions. So the one finding are arguable finding, although it didn't, the district court's a little bit unclear about whether it's making a finding on that or deciding on deficient performance. The one finding that we have is that, um, is that this, this was affirmative misadvice. And so all, all you have to, all the state court had to do at that point is just apply Padilla and say, affirmative misadvice is deficient. So Cory, the district court adopting the findings of the magistrate judge did not believe your client would have accepted the plea deal. And I just wonder what standard of review should we apply to the magistrate judges analysis on that point? Your honor, as to, to ask the conclusions of law by the magistrate court, as adopted by the district court, you apply a DeNovo standard of review. And as to findings, in fact, you, you, you, um, apply a clear error standard of review. Now the district court's finding that Mr. Uh, would not have accepted his plea agreement, despite his, um, despite his affidavits that he would have in the affidavits of his family members that he would have was based on reasoning that this court has already rejected before in the context. He said, well, he maintains self-defense at trial, but this court has said applying Supreme court precedent. That no, just maintaining your innocence does not mean that you cannot show prejudice because people choose to go to trial or to plead guilty for different reasons. And then the district court also said, well, he was facing a 30 years under a plea deal. But again, this court said, and Rebus Lopez, when looking to this first part of the prejudice analysis. That, uh, you know, any amount of time is significant for that. And so of course, when you're doing a totality of the circumstances analysis, maybe looking at a plea offer for 30 years, you know, in a vacuum, you would think, well, someone wouldn't take that, but it was because as he attests in his affidavits, not only with self-defense, the only issue at trial, but the duty to retreat was, was critical to his decision of whether he wanted to go to trial. And so. Your honor, we would just submit that that is a clearly erroneous finding under a very straightforward application of this court's precedents and the way relevant for adverse standards, the way this court has applied Supreme court precedents. Okay. Thank you, Mr. Horry. You deserve time for a bottle. Well, now, uh, we need to unmute Mr. Frederick and hear from him. All right, Mr. Frederick. Oh, wait, you got to unmute yourself. Okay. There you go. You're good. Go ahead. Thank you, judge Haynes. May it please the court, Matthew Frederick for the, for the director. The district court's judgment should be affirmed for two independent reasons. First state court reasonably could have determined the trial counsel's performance fell within the wide range of reasonable professional assistance. And second, the state court reasonably could have concluded that an IO was not prejudiced by trial counsel's alleged error. I think it's worth pausing before I get into the elements to be very clear about what the standard of review is because, uh, Mr. Anais suggests, for example, on his reply brief page four, that he's entitled to relief because he can show deficient performance and prejudice. But of course that's not true. Um, we have several layers of, of review that he has to overcome here. The first of course is Strickland, which is always difficult to meet, but when the re-litigation bar applies under section 2254 D as it does here, Supreme court has been clear that federal habeas review is doubly deferential. And in this case, because the, because the state court summarily denied his Strickland claim. The petitioner must show that there was no meeting for the state court to deny relief. So taking into account findings and conclusions that the state court could have made, Mr. Anaya must show that the state court's ruling was so lacking in justification that there's no fair-minded disagreement that it was wrong. And he can't make that showing here at this re-litigation bar precludes relief. And let me ask you about the discussion I had with Ms. Corey. Um, so for a moment, let's put aside the doubly deferential and just look at the Strickland question. Cause I think that's where you start and what is your response to her contention that it's enough to just say, well, he would have accepted the plea and there's nothing that would show us the state would have withdrawn the plea deal or the judge wouldn't have approved it and we're done. That's good enough. What's your response to that? My response is that that's incorrect. Um, I think what Mr. Anaya does here is he, he misunderstands the burden. It's very clear under EDPA that the petitioner bears the burden to show that the state court's determination was unreasonable. Now, Mr. Anaya relies heavily on Lafleur, but I think that's telling because Lafleur did not apply section 2254 D. There, the Supreme court said that EDPAs relitigation bar did not apply because of how the state court resolved the claim. So Lafleur just does not answer the question on the burden. In fact, it applied a different burden. Same thing with Frye. It's a direct review case, so it doesn't involve EDPA. Well, but Frye was very clear that you have to have something on this. I mean, that's why, and they sent it back to the state to say what were the state discretion, because there could be states that give the judge no discretion to reject the plea. Then this would be an easy thing to prove. You can have states to give total discretion. It'd be a harder thing to prove. And the, one of the things that they remanded for in Frye was that consideration. Right. Of course. And, and I think the, the burden is all the more clearly on the petitioner here. If we start with the question, whether he would have accepted this plea deal, but for counsel's advice here again, and I doesn't account for 2254. He says that reply 18, it's perfectly reasonable to believe that he would have made a different decision if counsel hadn't advised that failure to retreat quote did not matter. Unquote, but the question is whether any reasonable jurists could believe that Anaya would have made the same decision and here there is. There is reason to think in the record that he would have. And on the other side of the balance, Mr. Anaya does not provide any contemporaneous evidence to support his argument that he would have made a different decision. The first thing he relies on are of course, the affidavits, all of which were signed more than four years after the relevant events. And so I don't know that that, you know, his evidence of what he would have done, I think is harder to deal with, harder to refute if you will, then, um, the fact that to me, there's just nothing here that tells us what is the ordinary course of business in this court for dealing with plea agreements. And how are we therefore able to assess that the state wouldn't have withdrawn at the judge? I mean, what if he had a judge who denied the half of the plea in front of him or her versus a judge who never did? Those would be different circumstances. I would say here, and we don't have any indication of that. We don't even know what the rules are in Texas. If we just read y'all's briefs. So I don't see how they prove that that's where I'm going with this. I understand your honor. And I agree that there is nothing that he has provided in the record. And the answer to your question, how do we evaluate this? Is the court can't because he has not provided any basis to do so. And because it is his burden. That's this positive, whether we're looking at, you know, what the trial court might've done. We have nothing on that. He concedes there's no evidence in the record, um, whether the prosecution would have continued to make the plea offer available. Again, he concedes that he bears the burden. He doesn't point to anything in the record. Uh, this court's unpublished decision in Arnold versus Baylor, uh, provides at least some indication of what a petitioner might do because they're. The prosecutor testified in state court and confirmed that yes, if he would have accepted it, you know, before it expired, then yes, we would have honored that agreement. So that's something that a petitioner could do, but he hasn't done here. I think, and there is not a lot that he has pointed to in the record, but I think one thing to consider is in the plea offer, the written plea offer at record on appeal, 1391 to 92. The prosecution says, you know, look, we've, we've got three convictions here. And then we've got this other charge in the past about some kind of sexual misconduct with a minor. So there are three convictions in one charge. If you look at their pretrial filings, the state lists 21 convictions and prior bad acts that they intend to rely on. That's an ROA three 48 and 49. So that's at least some basis to question whether they would have continued to honor this. But really the answer is I've accepted it. Yeah, I've certainly seen federal district judges reject plea agreements. And there's not a lot of explanation why, but they certainly do it. So if there's a lot of discretion in the judge and you have somebody who's repeatedly committed wrong, and was that apparently still out on the street and then kill someone kind of randomly, uh, that might be a circumstance where you rejected plea. And I understand Ms. L Curry's point. It's true. You can't show what's in a judge's mind, but you can certainly look at the objective and at least assess it and analyze it. And that's what I feel like is missing here, but I don't want to. Well, no, I agree. I mean, you're, you are absolutely correct. And I think your point about what the court might've done with this greatly expanded list of convictions and prior bad acts, I think it's very reasonable. Given what we have in the record and what we don't have for the state court to say that Mr. Naya did not carry his burden to show prejudice on any of the prongs of prejudice, whether, you know, it's what the prosecution would have done or what the court would have done, or even whether he would have accepted the offer. Uh, you know, on that point, this court has been clear that self-serving post-talk affidavits are generally not sufficient to carry a petitioner's burden in the plea bargaining context and the Supreme court has been careful to note that the plea bargaining context creates a lot of potential for distortion based on when we're four years after trial, Mr. Anaya and his family members, they know now that he was convicted. They know that the defense wouldn't work. So of course, looking back with 20, 20 hindsight, it's very easy to say, gosh, if he had only told me a little more, I would have taken the deal, but, but it's, it's far from clear that that's the case. And it's not unreasonable by any stretch for the state court to reject that among other things about the duty of, of retreat, because it seems to be argued by Anaya as if, well, then he has no ability to defend himself if he has a duty to retreat. And that's not how I understand the duty to retreat. And while I think, why I think the pre 2007 cases are relevant, because as I understand it, everyone had a duty to retreat to some degree. And this exception was added in 2007. But if someone is, you think you are in imminent danger and you don't think we're treating would say that, that is something where you can defend yourself. You can shoot, shoot if you will. Right. I mean, so it's not as if he couldn't make that argument that frankly, with or without the duty to retreat, if you're just shooting randomly at cars around you, you're going to be convicted. If you are, if somebody's got a gun to your head and you shoot them because you think you're about to be shot, whatever your duty to retreat, you, you, you illegally possess that gun. You're going to be okay. It's the in-between that's a little bit hard. And so it depends on where you view this set of facts as to where he kind of was in those two, two. That's a, that's absolutely right. And, and I agree, I think judge Haines, you're, you're correct about the state of the law. Now there was, you know, at the time of the trial, it wasn't 100% clear how the 2007 amendment to the self-defense statute affected the duty to retreat in every respect, but there was certainly authority at the time, as we have cited, uh, on page 18 of our brief, there were state courts that said, well, they took out the duty to retreat. Um, so, but I, but I think the more important point on prejudice is if you look at his affidavits, this goes to what you were just saying, the affidavits seem to assume that, well, if I had known that the duty to retreat would completely invalidate my self-defense claim, I would have taken the deal. But if that's what counsel had told him, that would have been affirmative misadvice because that's not what the law provided. The question is ultimately whether he was reasonable in taking action to defend himself. Now we know that, you know, whether he retreated is relevant, but it doesn't eviscerate his defense in any sense. And on the question, whether he would have taken the plea deal, despite the alleged erroneous advice, I think it's important not just to look at the affidavits, but, and not even to look at what he maintained at trial, but look at what he has continued to maintain through post-trial and collateral proceedings. He's always argued that he should have won on self-defense. For example, his state habeas petition in the CCA at ROA 1443, three of the four claims he brings are based on the argument that he would have counsel had only ensured that the jury got a proper instruction. Now, of course he has a claim on the other side, which says, well, he should have given me better advice about the duty to retreat, but it's very unclear what he thinks counsel should have told him. And I think this is a good point to jump back to the deficient performance because that argument centers very much on a factual question, which is what did counsel say to Aniya before trial? That's what I want to ask you about, because at trial, the lawyer certainly made the argument about, it would not have been reasonable to retreat because a bullet can find you or go around the corner or whatever he said at trial. And that to me reflects on the deficient performance of whatever he might've said to Aniya, that Aniya says, he didn't tell me about this exception about the duty to retreat because I was a convicted, had a conviction and what the lawyer is saying about, you've got a very good defense. I'm at least saying that at trial, how does a, how do we as a federal appellate court judge that in the light of the double deference do under ad hoc? Right. Well, so the question we're asking of course, is whether there's any reasonable argument that counsel satisfied strictly, and I think what that focuses on here is a factual question about what exactly was the that is subject to review under 22 50 42, the state court's implicit finding that trial counsel did not misadvise Mr. Aniya is entitled to a presumption of correctness that can only be overcome by clear and convincing evidence. Now, just to go to where you're, where you went, judge Barksdale about what he argued at trial. So I think at most that is ambiguous. I think it is reasonable. Well, it is reasonable to read that as consistent with a correct understanding of the law, because what he argued to the jury was, I recognize that there are these particular factors that can make the duty to retreat. You're relevant. But what I'm telling you is those don't matter here because my client had a gun pointed at him. And in that circumstance, his action was reasonable whether he retreated or not. And that is consistent with the tech, with the state law that applied. And so, I think, for example, in my high school, you have a felon who has a gun, but someone runs up to him and holds a gun to his head and he shoots them. You're not going to say they should have retreated there. Cause if I try to run off and then got a gun to me, it was shooting me. Of course, that's his argument here. And so the duty to retreat is not the central point here when you're saying they've got a gun pointed at me, they're in a car I can drive off, but they can follow me, maybe could have gotten away. Maybe I'm such a fast runner. I could run away from the guy pointing the gun at me, but I don't think anybody  and so regardless of what the exception says, it doesn't say versus, um, you easily could have left and you easily could have avoided this. So then you really don't have imminent harm. I think that's absolutely right. And, and it, it goes back to what you mentioned earlier, judge Haynes, which is there. I think we've got kind of two extreme versions, um, from the petitioner about what the law is on the one hand, the affidavit suggests that this duty to retreat kind of eliminated itself, a self-defense claim for him. That's not correct. And then he has, I think he's hypothesized or asked the court to infer that trial counsel went to the other extreme and said, as he says at 19 of the opening brief and two and seven of the reply, he says, counsel told him that quote, failure to retreat was legally irrelevant in quote. Now that's not correct, but it was absolutely reasonable for the state court to determine that that is not what counsel said to him. And he can't prove by clear and convincing evidence that it is what the Nia's own affidavit at 1387. It's interesting that the only phrase that is quoted by Mr. Anaya is viable defense. He says, counsel said I had a viable defense. He would argue that my conduct was reasonable and he informed me that I had acted reasonably and that it did not matter or make a difference if I had the ability to retreat. So that leaves us with a question of interpretation. Is it a statement of opinion or is it a statement of law? If you think of it as a statement of opinion, counsel could have said, listen, you have a viable defense. We can argue self-defense. I think your conduct was reasonable under the circumstances because you had a gun pointed at you. They later found a gun. That's a statement of opinion. That's not affirmative misadvice. Now think about another hypothetical. This would be a statement of law. Counsel said, Hey, listen, we've got a slam dunk self-defense claim. Failure to retreat is legally irrelevant. Your conduct was reasonable as a matter of law. This is a slam dunk. That is not what the record shows. Counsel said now that would have been incorrect, but that's not what the record shows. And I think it's, it's also worth noting that every family member's affidavit that he relies on when they talk about what trial counsel said, they say that trial counsel was of the opinion that his conduct was reasonable. So I think that is very strong evidence that counsel did not affirmatively misrepresent the law. And it's certainly enough to support the state court's reasonable finding that counsel did not render inadequate performance. And if there are no further questions, we respectfully urge the court to affirm the district court. Okay. Thank you, Mr. Frederick. Ms. El-Khoury, if you can unmute yourself and rebut. There you go. You're on. Okay. Just a few points to make on rebuttal. Your honors. Um, the first one is you are talking about what would be reasonable under Texas law. And this was a case where Mr. Anaya was in a car. He never says in his affidavits that his attorney told him that the duty that, that the duty to retreat, um, meant that he could not be convicted. What he says instead is that he told me that I acted reasonably and that it did not matter or make a difference if I had retreated. And so, and if you look at the next sentence of his affidavit, he says, if I had known that the law had required me to retreat or that the state or that the jury could consider my failure to retreat. And so to the extent that state court, you know, we're deferring to the state court finding that the district court here actually disagreed with that finding and said, I have unrebutted affidavits on this record showing stating that counsel told Mr. Anaya that he misrepresented what the law was. And so in this case, again, the question, the relevant lens at which to look, uh, through which to look at it, this is, um, what did Mr. No, was he informed when he was making the decision, whether to plead guilty or to go to trial, if he was misadvised about a central point in the case, then that is deficient performance. And that's exactly what happened here. He went into trial thinking that the jury would not be able to consider retreat and the jury would be able to consider retreat and respectfully, your honor, this is a case on the margins where if someone's in a car, any reasonable juror is going to say that person could have just stepped on the pedal and driven away. And that's exactly what the state court said here is that's exactly what the state said when it got up in its closing argument, um, on prejudice, your honor. I just want to go back to this, this question of, um, you know, whether Mr. Anaya would have accepted the plea. Um, my opposing counsel said that, you know, the plea offer mentioned that the crime was very serious and that he had multiple prior convictions, but what Lafleur says is intervening circumstances. That means a circumstance that happens after the state offers that plea. And so the plea had already taken into account the seriousness of the crime. And you can't double count. Then after that, what you're looking to is whether something happened after that would have caused the state to withdraw that or the court to reject it again, yes, in Texas, as in many jurisdictions, almost all the court has discretion to reject a plea bargain, but there's simply no reason here to think that he would have done so. And that is all a defendant can offer in this case. That's why Lafleur affirmed the sixth circuit's reasoning. It would make Lafleur's promise hollow. If this court required more central point in Lafleur and fry is the case that really discusses this at length and how this is a matter of state. Um, law. And the fact is whether or not he could have established it, I'm and what he did to establish it. And that's the part that I'm having trouble with, not whether he ultimately could, or maybe if we were the state trial court, we would say that. But what did he do to establish that? Well, your honor, again, reading his pleadings, of course, we would prefer that he would have done this a little bit more strongly in the courts below. Um, you know, his pleading is not perfect and his briefs aren't perfect. But he did say that there, that there's, you know, no reason to think that there's no record on whether the state court would have denied it and whether the state would have withdrawn the plea. And so, you know, we've come in now representing and pointing to the places in the record that show why this was well within what happens in plea bargaining, which is, you know, a state court cannot be involved in plea negotiations, um, counsel and the client discuss it and the court, you know, typically accepts it unless there's some reason to think that it hasn't, and this court has looked for those particular facts and circumstances. Where in the record is the typically except where can I find that? It's not your honor. It's not in the record of the court that a court typically accepts. But I, but respectfully, I don't think that that is what Friar by that record in analyzing the reasonless or unreasonable. And so the state court action. Yes, your honor. But the part of the record that's relevant here, it's, it's Fry doesn't require you to put forth extra evidence that, you know, this court accepted this many, please, this many other, please. What Fry says is, are there intervening facts or particular circumstances to think that the court would have rejected it and this court has looked for those. And it has said what they are. Those are things like the sentence was outside of the guidelines range or the court commented on, you know, well, this is the sentence that I would impose regardless of the plea, or there were multiple pleas at issue. There is none of that here. That is the part of the record that is relevant. The fact that there's no particular factor intervening circumstances to suggest that the court would have rejected this and certainly not that the state would have withdrawn it, given that it had already taken into account the nature of the crime. I see that my time's up, your honor. Um, and, uh, thank you very much. I want to thank you, Ms. El-Khoury for accepting the pro bono, uh, appointment on this case. We appreciate that very much. And of course we also appreciate your arguments, Mr. Frederick, this case is now under submission and I would ask the courtroom deputy to excuse the public and, uh, the lawyers from the courtroom.